## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| JOY HARVICK, individually and on behalf of all others similarly situated;<br><br>                    Plaintiff,<br>v.<br><br>ELON MUSK & AMERICA PAC,<br><br>                    Defendant. | Case No. _____<br><br>Related to Case No.: 1:24-cv-1346<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

Plaintiff Joy Harvick ("Plaintiff"), by and through undersigned counsel, brings this Original Complaint—Class Action ("Complaint") and the following cause of action against Defendants Elon Musk and America PAC (collectively, "Defendants"), alleging as follows:

## JURISDICTION AND VENUE

1.      Under 28 U.S.C. § 1332(d), the Class Action Fairness Act, this Court has jurisdiction over the claims alleged herein. As alleged below, this claim has all of the following: (1) minimal diversity; (2) 100 or more putative class members; and (3) more than $5 million dollars in controversy.

2.      The Court also has Diversity Jurisdiction over this case under 28 U.S.C. § 1332(a)(1) because Plaintiff is domiciled in Arizona and Defendants are domiciled in Texas.  Thus, complete diversity exists between Plaintiff and Defendants.

3.      Venue is proper under 28 U.S.C. § 1391(b) because Defendant Elon Musk resides in this District and Defendant America PAC is headquartered in this District.

**PARTIES**

4.      Plaintiff is a citizen and resident of Maricopa County, Arizona.

5.      Defendant Elon Musk ("Musk") is a citizen and resident of Travis County, Texas.

6.      Defendant America PAC ("America PAC") is a political action committee founded by Musk to support "Secure Borders, Safe Cities, Free Speech, Sensible Spending, Fair Justice System and Self-Protection." *See* America PAC, https://theamericapac.org/ (last visited Nov. 4, 2024).

7.      Musk founded and funded America PAC, is involved in its operations, made representations on behalf of America PAC, and benefits from increased traffic generated by America PAC on the social media platform X, of which Musk is the majority owner.

8.      America PAC is headquartered in Austin, Travis County, Texas.

**FACTUAL ALLEGATIONS**

9.      Plaintiff brings this case against Defendants for fraud, breach of contract, unjust enrichment, and for injunctive relief.  Plaintiff seeks to certify a class of similarly situated persons under Federal Rule of Civil Procedure 23(b)(1), (b)(2), and (b)(3).

10.      On or about October 7, America PAC launched a "Petition in Favor of Free Speech and the Right to Bear Arms," (hereinafter, "the petition" or "the America PAC petition") with an offer to pay individuals $47 for each registered voter referred who signed the petition. That petition stated it was "exclusively open to registered voters in

2

Pennsylvania, Georgia, Nevada, Arizona, Michigan, Wisconsin and North Carolina" and

"[e]xpires November 5." *See* https://petition.theamericapac.org/ (last visited Nov. 4, 2024).

11.     At an October 19, 2024 rally, on Musk's X platform, and on America PAC's

website, Defendants announced that if a registered voter turned over their personal

identifying information (*i.e.,* address, cell phone number and e-mail address) and made a

political pledge by signing a petition pledging support for "the Constitution, especially

freedom of speech and the right to bear arms," they would be eligible to be selected

"randomly" to win $1 million. *See* Kat Tenbarge, "Elon Musk announces $1M giveaway

for voters who sign petition in battleground states." *NBC News,* October 19, 2024.[1]

12.     When the announcing this purported sweepstakes, Musk stated:

> I have a surprise for you, which is that we're going to be awarding a million
> dollars to – randomly – to people who have signed the petition, every day
> from now until the election. So, you know, one of the challenges we're
> having is like, how do we get people to know about this petition … I figure,
> how do we get people to know about it? Well, this news, I think, is going to
> really fly. *See* Elon Musk (@ElonMusk) (video embedded in URL) (Oct 19,
> 2024, 11:06 P.M.).[2]

13.     Musk then said that he would announce the first winner that evening, and he

called the name "John Dreher." *Id.*

14.     Mr. Dreher was in the audience and mounted the stage in a red MAGA hat.

"By the way," Musk said, "John had no idea." *Id.*

---

[1] https://www.nbcnews.com/tech/tech-news/elon-musk-raises-payment-offer-100-voters-sign-petition-rcna176075
[2] https://x.com/america/status/1847851986495881434

15.     When Mr. Dreher came onto the stage to accept an oversized check, Musk asked that, in exchange for the money, "the only thing we ask" is for John to agree to be a spokesperson for America PAC. *Id.*

16.     Shortly after Musk's live announcement of Mr. Dreher's as the first winner on October 19, America PAC posted on X: "Every day from now until Election Day, one registered swing state voter who signs the petition will be selected to earn $1 MILLION," and included a link to the petition on America PAC's website. *See* America PAC (@America), "John received $1 MILLION . . . ." X (Oct 19, 2024, 11:58 P.M.).[3]

17.     Musk posted a similar message minutes before. *See* Elon Musk (@ElonMusk), "Every day, from now through Nov 5 . . . ." X (Oct 19, 2024, 11:25 P.M.).[4]

18.     The next day, on October 20, 2024, during another America PAC event, this time in McKees Rocks, Pennsylvania, Musk conducted a second "random" drawing, selecting Kristine Fiskell as the winner, who was also in the audience that day. *See* Adam Babetski, "Musk gives away $1 million at McKees Rocks pro-Trump rally, raising legal questions." *Pittsburgh Post-Gazette*, October 20, 2024.[5]

19.     That same day, on October 20, 2024, Musk publicly stated: "All you need to do is sign the @America petition in support of the Constitutional rights to free speech & bear arms to have a daily chance of winning $1,000,000! You can be from any or no

---

[3] https://x.com/america/status/1847864967816511758
[4] https://x.com/elonmusk/status/1847856712914555061
[5] https://www.post-gazette.com/news/election-2024/2024/10/20/elon-musk-1-milliontrump-legal-questions-pittsburgh/stories/202410200166

political party and you don't even have to vote." *See* Elon Musk (@ElonMusk), "All you need to do . . . ." X (Oct 19, 2024, 11:25 P.M.).[6]

20.    Predictably, Musk's promise of a sweepstakes with a randomly selected winner was widely reported through national and local media, including:

- Isabel Keane, "Elon Musk is giving away $1 million a day to voters who sign his election petition — here's how to cash in." *New York Post,* October 20, 2024 ("Billionaire Elon Musk pledged to give away $1 million each day until November's election to people who sign his online petition for registered voters — meaning the jaw-dropping sum will be doled out at random 16 more times until Election Day.")[7];

- Elizabeth Weibel, "Elon Musk Announces He Is Giving $1 Million 'Randomly' to People Who Sign His Petition in Favor of 1st, 2nd Amendments." *Breitbart,* October 20, 2024 (" . . . the America PAC would be giving $1 million away "randomly" to people who sign his petition in favor of the First and Second Amendments.")[8];

- Alexandra Marquez, "Pennsylvania Gov. Shapiro: Law enforcement should 'take a look at' Elon Musk voter payments." *NBC News*, October 20, 2024 ("Musk announced Saturday that every day until Election Day, he would give $1 million to a randomly selected voter who signs a petition circulated by his super PAC.")[9];

- Ishika Mookerjee, "Musk's pro-Trump PAC plans $1 million handouts in swing states." *Fortune,* October 20, 2024 ("The pro-Donald Trump group, called America PAC, will pick a random registered voter in swing states to win the prize through Nov. 5, Musk said in a post on X.")[10];

- David Spector, "Elon Musk awards random petition signer $1M check, vows to do so every day until election." *New York Post,* October 20, 2024 ("Musk handed an over-sized million dollar check to John Dreher, who Musk said was randomly selected to receive the jaw-dropping sum.")[11];

---

[6] https://x.com/elonmusk/status/1848147035607998575
[7] https://nypost.com/2024/10/20/us-news/elon-musks-1-million-petition-giveaway-how-to-cash-in/
[8] https://www.breitbart.com/politics/2024/10/20/elon-musk-announces-he-is-giving-1-million-randomly-to-people-who-sign-his-petition-in-favor-of-1st-2nd-amendments/
[9] https://www.nbcnews.com/politics/2024-election/pennsylvania-gov-shapiro-law-enforcement-take-look-elon-musk-voter-pay-rcna176279
[10] https://fortune.com/2024/10/20/elon-musk-donald-trump-america-pac-1-million-prize-swing-states/
[11] https://nypost.com/2024/10/20/us-news/elon-musk-awards-pennsylvania-rally-goer-john-dreher-with-million-dollar-check/

- Tom Bennett, "Musk's $1m-a-day to swing states voters 'deeply concerning.'" *BBC News,* October 20, 2024 ("The winner will be chosen at random from those who sign a pro-US Constitution petition.")[12];

- Emma Marsden, "Elon Musk Petition Winners So Far: Meet the People Handed $1M Checks." *Newsweek,* October 21, 2024 ("The SpaceX CEO is offering $1 million daily to a randomly selected registered voter who signs the petition supporting the First and Second Amendments of the U.S. Constitution.")[13];

- Evan Perez, "Justice Department warns Elon Musk that his $1 million giveaway to registered voters may be illegal." *CNN,* October 23, 2024 ("The language of the petition currently promises $1 million prizes to people chosen at random for signing a petition in support of First and Second Amendment freedoms.")[14];

- Chloe Morrissey, "Elon Musk offers WI voters a chance to win $1 million, raises legal issues." *WKOW ABC 27,* Oct 24, 2024 ("One random signee is selected every day for the $1 million prize.")[15];

- John Tunison, "Michigan man latest to win Elon Musk's controversial $1M giveaway to registered voters." *Michigan Live,* October 25, 2024 ("Winners are chosen at random.")[16];

- Anya van Wagtendonk, "Eau Claire man wins Elon Musk's $1M voter sweepstakes which may violate election law." *Wisconsin Public Radio,* October 25, 2024 ("Musk, who owns the social media website X, has been giving away the money to random winners selected from entrants who live in swing states, register to vote, and sign a petition to support the First and Second Amendment.")[17]

21.     As consideration to enter the lottery and "sign" the petition, a participant must provide several data points of personal information: first and last name, email address,

---

[12] https://www.bbc.com/news/articles/cg78ljxn8g7o
[13] https://www.newsweek.com/elon-musk-one-million-dollar-petition-giveaway-winners-1972045
[14] https://www.cnn.com/2024/10/23/politics/elon-musk-justice-department-letter/index.html
[15] https://www.wkow.com/news/top-stories/elon-musk-offers-wi-voters-a-chance-to-win-1-million-raises-legal-issues/article_dba8043a-9250-11ef-9b2a-77562d16cff9.html
[16] https://www.mlive.com/politics/2024/10/michigan-man-latest-to-win-elon-musks-controversial-1m-giveaway-to-registered-voters.html
[17] https://www.wpr.org/news/elon-musk-trump-voter-giveaway-eau-claire-wisconsin

mailing address, and cell phone number. *See* https://petition.theamericapac.org/ (last visited Nov. 4, 2024).

22.    A participant must then click a button that says "Sign Petition," with a space above asking for cell phone information that: "Will only be used to confirm you are the legitimate petition signer. No other purpose." *Id.*

23.    The America PAC petition places no limitations on America PAC's use of or sale of the personal data it collects, nor does it provide any additional information about the planned use of data. *Id.*

24.    Since launching on October 19, 2024, America PAC claims it awarded $1,000,000 checks to eighteen individuals through its random selections of winners.

25.    Each winner is featured on America PAC's website and X handle, and has garnered significant public and press attention, driving significant traffic to Musk's X platform.

26.    America PAC claims it has received over 1,000,000 petition signers to date.

27.    In court on November 4, 2024, Musk's attorney told a judge in Philadelphia that "so-called 'winners' of his $1 million-a-day sweepstakes in swing states are not chosen by chance but are instead chosen to be paid 'spokespeople' for the group." *See* Maryclaire Dale, "Musk's PAC claims $1 million 'winners' not chosen by chance." *Associated Press,* November 4, 2024.[18]

---

[18] https://www.pbs.org/newshour/politics/musks-pac-claims-1-million-winners-not-chosen-by-chance

28.     Musk's lawyer further stated that "[t]he $1 million recipients are not chosen by chance. We know exactly who will be announced as the $1 million recipient today and tomorrow." *Id.*

29.     Finally, Musk's lawyer stated that the recipients are chosen based on their personal stories and sign a contract with America PAC. *Id.*

30.     Therefore, Defendants' statements indicating that individuals who signed the petition would be chosen at random to win $1,000,000 were false, and Defendants knew those statements were false at the time they were made.

31.     Defendants made the false statements with the intention of inducing individuals to sign the America PAC petition.

32.     Plaintiff signed the America PAC petition on October 23, 2024.

33.     Plaintiff submitted her personal, private information (first and last name, email address, mailing address, and cell phone number) (hereafter PII) as a condition of signing the petition, as described above.

34.     Plaintiff signed the petition in reliance on statements by Musk and America PAC that in doing so she had a daily random chance of receiving $1,000,000 equal to that of all other petition signers.

35.     Defendants obtained the benefit and value of Plaintiff's PII for use in their political or commercial pursuits. Defendants further profited off of the valuable consideration provided by Plaintiff and the Class by driving traffic and attention to Musk's X Platform. In addition, Defendants can profit or benefit from the use/sale of Plaintiff's PII, which she was required to provide for participation in Defendants' lottery.

8

36.     Had Plaintiff been aware that the lottery was not random, or that she did not have a fair chance to win the prize, or that her selection hinged on her perceived favorability to Defendants as a marketing prop, she would not have signed or supported the America PAC petition and would not have provided her PII to Defendants. Her signature/support, as well as her PII were given as valuable consideration for the random chance to receive the $1,000,000 every day until the conclusion of the election.

37.     Defendants defrauded Plaintiff and the Class Members by seeking their political support, as well as PII – both of which were valuable consideration provided by Plaintiff and the Class Members, in exchange for a daily random chance to receive $1,000,000 which was never an actual chance. Plaintiff seeks to hold Defendants responsible to Plaintiff and those similarly situated Class Members who had their valuable personal support and information taken by Defendants.

## CLASS ALLEGATIONS

38.     Plaintiff brings Count I of this action under Rule 23(b)(3) on behalf of a class tentatively defined as:

**All citizens of the United States who signed the America PAC Petition.**

39.     Excluded from this class definition are employees, officers, directors of Defendant, and attorneys appearing this case, and any judge assigned to hear this action.

40.     Plaintiff reserves the right to modify this class definition as she obtains relevant information.

41.     Each of the persons in the proposed Class has been harmed by the fraudulent acts of Defendants.

**The Action Meets the Requirements to be Certified as a Class**

42.     Plaintiff is a member of the proposed Class.

43.     The proposed Class can be identified through records of individuals who signed the petition.

44.     <u>Numerosity.</u> The number of Class Members is believed to be over one million, rendering the classes so numerous that individual joinder of all Class Members is impracticable.

45.     <u>Commonality.</u> There are questions of law and fact common to Plaintiff and to the proposed class, including, but not limited to, the following:

   a.  Were Defendants' statements false?

   b.  Did Defendants know their statements were false at the time they were made?

   c.  Did the individuals who signed the Petition convey to Defendants their personal information, such as cell phone numbers, addresses, and email addresses?

   d.  What are the extent of the damages suffered by the proposed class?

46.     <u>Typicality.</u> Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the proposed Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

47.     <u>Adequacy.</u> Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the proposed Class because her interests coincide with, and are not antagonistic to, the interests of the Members of the proposed Class she seeks to represent; she has retained

counsel competent and experienced in such litigation; and she intends to prosecute this action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of Members of the proposed Class.

48.    Superiority. Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the proposed Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on proposed Class members.

49.    The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the Members of the proposed Class to individually redress effectively the wrongs done to them, as the fraud claim has no fee-shifting provision. Even if the Members of the proposed Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

50.     Class certification is appropriate because Defendants have acted on grounds generally applicable to the proposed Class, making appropriate equitable injunctive relief with respect to Plaintiff and the proposed Classes' Members. Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

51.     The right to a remedy for an injury is a constitutionally protected right. Tex. Const. art. 1, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law").

## COUNT I: FRAUD

52.     Plaintiff incorporates the foregoing and subsequent paragraphs of this Complaint.

53.     There are six elements required to prove a fraud claim: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the representation was made with the intention that it be acted upon by the other party; (5) the party acted in reliance upon the representation; and (6) the party suffered damages.

54.     Defendants made material representations, i.e. that by signing the petition, Plaintiff and members of the proposed Class were eligible to win $1,000,000 through random selection in a daily lottery. Because of the large sums of money involved, a reasonable person would attach importance to such a representation.

55.     Defendants' representations were false because they have since admitted that the winners were pre-determined and selected based on subjective criteria.

12

56.     Defendants knew their representations were false at the time they were made, yet Defendants continued to promote the petition as a chance to win $1,000,000 "randomly" while simultaneously choosing winners based on selective, pre-determined criteria.

57.     Defendants intended that their representations be acted upon by Plaintiff and members of the proposed Class. Defendants continually promoted the petition and encouraged individuals to sign it.

58.     Plaintiff and other members of the proposed Class relied on Defendants' representations in signing the petition—$1,000,000 is a substantial amount of money which motivated individuals to sign the petition.

59.     Individual proof of reliance is not necessary here because any participant provided their personal identifying information with the understanding the lottery was legitimate.

60.     Plaintiff and other members of the proposed Class suffered damages by giving their valuable personal information to Defendants based on a false representation.

**COUNT II: BREACH OF CONTRACT**

61.     Plaintiff incorporates the foregoing and subsequent paragraphs of this Complaint.

62.     There are five elements required to prove a breach of contract claim: (1) there is a valid and enforceable contract; (2) the plaintiff is the party bringing suit; (3) the plaintiff performed her contractual obligations; (4) the defendant breached the contract; and (5) the party suffered damages.

13

63.     Defendants made material representations, i.e. that by signing the petition, Plaintiff and members of the proposed Class were eligible to win $1,000,000 through random selection. Because of the large sums of money involved, a reasonable person would attach importance to such a representation.

64.     Defendants' representations were false because they have since admitted that the winners were pre-determined and selected based on subjective criteria.

65.     Plaintiff provided her personal identifying information as consideration for being eligible to win $1,000,000 in a random lottery.

66.     Plaintiff and other members of the proposed Class relied on Defendants' representations in signing the petition—$1,000,000 is a substantial amount of money which motivated individuals to sign the petition.

67.     Defendant breached the contract by pre-determining the winners of the purported lottery and not drawing randomly as Defendant had agreed to do.

68.     Plaintiff and other members of the proposed Class suffered damages by giving their personal information to Defendants without receiving the benefit of the bargain – a legitimate and random chance to win the prize equivalent to all other entrants.

**COUNT III: VIOLATIONS OF THE UNCONSCIONABILITY ARM OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**

69.     Plaintiff incorporates the foregoing and subsequent paragraphs of this Complaint.

70.     There are four elements required to prove a claim under the unconscionability arm of Tex. Bus. & Com. Code §17.44(a), the Texas Deceptive Trade

Practices Act: (1) the plaintiff is a consumer; (2) the defendant can be sued under the DTPA; (3) the defendant engaged in an unconscionable action; (4) the defendant breached the contract; and (5) the defendant's action was the producing cause of the plaintiff's damages.

71.     Plaintiff is a consumer who purchased the right to be in Defendants' lottery by providing her personal identifying information.

72.     Plaintiff's personal identifying information is a thing of value Defendant required before Defendant would allow Plaintiff or any other class member to participate in the lottery.

73.     Defendants made material representations, i.e. that by signing the petition, Plaintiff and members of the proposed Class were eligible to win $1,000,000 in a random selection. Because of the large sums of money involved, a reasonable person would attach importance to such a representation.

74.     Defendants' representations were false because they have since admitted that the winners were pre-determined.

75.     Because Defendants knew all along the winners were pre-determined, and had no intention of operating a genuine lottery as Defendant represented it would, Defendant engaged in an unconscionable course of conduct giving rise to a DTPA claim.

76.     Plaintiff and other members of the proposed Class relied on Defendants' representations in signing the petition—$1,000,000 is a substantial amount of money which motivated individuals to sign the petition.

77.    Plaintiff and other members of the proposed Class suffered damages by giving their personal information to Defendants without receiving the benefit of the bargain – a legitimate and random chance to win the prize equivalent to all other entrants.

**COUNT IV: UNJUST ENRICHMENT**

78.    Plaintiff incorporates the foregoing and subsequent paragraphs of this Complaint.

79.    The elements required to prove an unjust enrichment claim are (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit.

80.    Here, Plaintiff and other members of the proposed class provided their valuable PII to Defendants, conferring a benefit. The PII of responsive swing state voters is particularly valuable to political action committees such as America PAC.

81.    In this case, Defendants' petition was not actually a petition, as it was not a request made to an authority or organized body seeking some type of action. Here, the sole purpose of collecting PII was so that Defendants could benefit from its political and commercial use.

82.    Defendants' benefit was purely at Plaintiff's expense. Though Plaintiff should have been given a daily random chance at a $1 million prize until the conclusion of the election, she gave away the benefit of her PII for no actual value, and Defendants benefited at her expense.

83.     Given the circumstances of Defendants' actions, it would be unjust to allow Defendants to keep the benefit since Plaintiff was induced to provide Defendants a valuable benefit while under the impression that she would receive something of value in return.

**COUNT V: INJUNCTIVE RELIEF UNDER FED. R. CIV. P 23(b)(2)**

84.     Plaintiff incorporates the foregoing and subsequent paragraphs of this Complaint.

85.     Plaintiff and the proposed class members provided their personal identifying information to Defendants as a condition and requirement by Defendants before Plaintiff and the proposed class members were permitted to participate in the purported lottery.

86.     Plaintiff and the class members would not have provided their personal identifying information if Defendants did not require it as a condition of participation.

87.     Defendant did not specify how Plaintiff or the proposed class members' data would be used or stored after Plaintiffs provided it to Defendants.

88.     Plaintiff and the proposed class members having now discovered no legitimate lottery existed, and that they provided their personal identifying information to Defendants for nothing in exchange, now demand Defendant be enjoined from using the data or otherwise providing it to third parties.

89.     Plaintiff demands the Court enjoin Defendant by requiring Defendant to destroy all personal identifying information Plaintiff and the proposed class members provided to Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and as a representative of all other persons similarly situated, prays for judgment against Defendants, awarding relief as follows:

a.      Certifying the proposed Class under Fed. R. Civ. P. 23 and appointing Plaintiff and her counsel to represent the Class;

b.      Damages suffered by Plaintiff and each member of the Class;

c.      Pre-judgment interest from the date of filing this suit;

d.      Injunctive Relief under Fed. R. Civ. P. 23(b)(2);

e.      A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

f.      All costs of this proceeding; and

g.      All general, special, and equitable relief to which Plaintiff and the respective Members of the Class are entitled to by law.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial by the maximum number of persons permitted by law on all issues herein triable to a jury.

Date:  November 11, 2024,

Respectfully submitted,

**FARRAR & BALL, LLP**

/s/Kyle W. Farrar
KYLE W. FARRAR
W.D. Tex. Bar No. 352045
MARK D. BANKSTON

18

(pro hac vice forthcoming)
Tex. State Bar No. 24071066
WILLIAM R. OGDEN
(pro hac vice forthcoming)
Tex. State Bar No. 24073531
1117 Herkimer
Houston, TX 77008
(713) 221-8300